BOSTON LODGE, No. 10, BENEVOLENT & PROTECTIVE ORDER OF ELKS *vs.* CITY OF BOSTON.

Suffolk.     December 10, 1913. — February 28, 1914.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & DE COURCY, JJ.

*Practice, Civil,* Agreed statement of facts. *Evidence,* Presumptions and burden of proof. *Tax,* Exemption. *Charity.*

Under St. 1913; c. 716, § 5, permitting inferences of fact to be drawn from the facts and documents stated in an agreed statement of facts unless the parties stipulate to the contrary, a general finding made by a trial judge upon an agreed statement of facts will not be disturbed unless it is unwarranted by all the evidence, including both the facts stated and the reasonable inferences that may be drawn from them.

The burden of proof is upon one seeking to establish an exemption from taxation.

If a lodge incorporated as a charitable and benevolent institution owns a building in which it maintains a club for the social enjoyment of its members, and if the dominant use of the real estate is that of a private clubhouse rather than that of a headquarters for the dispensation of charitable relief, such real estate is not exempt from taxation under St. 1909. c. 490, Part I, § 5, cl. 3, as owned and occupied by a charitable institution for the purpose for which it was incorporated, although the purposes stated in the charter and constitution of the lodge are charitable, it performs many charitable functions, and the secretary's office and the lodge room are in the building.

CONTRACT by a lodge incorporated as a charitable and benevolent institution under the laws of the Commonwealth to recover the amount of a tax of $3,280, paid with interest and costs by the

plaintiff under protest, which tax was assessed on April 1, 1911, on the real estate of the plaintiff numbered 8, 10 and 12 on Somerset Street in Boston, alleged to have been occupied by the plaintiff and its officers solely for the purposes for which the plaintiff was incorporated. Writ dated May 8, 1912.

In October, 1913, the case was submitted upon an agreed statement of facts to *Hall*, J., who found for the defendant and ordered judgment accordingly. From the judgment entered in pursuance of this order the plaintiff appealed.

*F. P. Garland*, (*D. J. Kane* with him,) for the plaintiff.

*G. A. Flynn*, for the defendant.

RUGG, C. J. This is an action to recover taxes on real estate paid under protest and alleged to have been assessed to the plaintiff illegally. The plaintiff contends that it is a charitable corporation and that its real estate is devoted to the charitable enterprises for which it was incorporated, and hence exempt from taxation. The case was submitted to the Superior Court on an agreed statement of facts, from which under St. 1913, c. 716, § 5, reasonable inferences might be drawn both by the trial court and by this court on appeal, and a general finding was made for the defendant. This decision will not be disturbed unless unwarranted by all the evidence, including both the specific facts and the reasonable deductions of which they are susceptible. *Cunningham* v. *Connecticut Fire Ins. Co.* 200 Mass. 333.

It is the general policy of our law that all property shall contribute proportionately to the support of government. Although exceptions are made of property devoted to certain uses, the burden of proof is upon everybody who claims it to show clearly and unequivocally that he comes within the terms of the exemption. Doubt upon this point operates against the party making the claim. *Redemptorist Fathers* v. *Boston*, 129 Mass. 178.

The statute under which the plaintiff asserts the illegality of the tax on its real estate is St. 1909, c. 490, Part I, § 5, cl. 3, which exempts the real estate of charitable institutions "owned and occupied by them or their officers for the purposes for which they are incorporated." The plaintiff's real estate consists of about eight thousand square feet of land, with a brick building thereon, all assessed for $200,000, and entirely occupied by the plaintiff. On the first floor is the secretary's office, ladies' reception room,

kitchen, stock room and dining room; on the second floor a library, two lounging rooms, a billiard room and toilet; on the third floor is a large lodge room with two anterooms, and on the fourth floor two shower baths and nine sleeping rooms. The purposes stated in the charter and constitution of the plaintiff may be assumed to be charitable. Many charitable functions are performed by it. Between two and four thousand dollars have been expended annually for several years in affording aid to its members and visiting members of the order. From the list of expenses for the last year set out in the facts it perhaps may be inferred that a total of about $8,000 has been expended for poor relief to members and others, funeral services and burial of members, medical attendence, lectures and entertainments.

But in accordance with the constitution of the order the plaintiff maintains a club for the social enjoyment of its members. It is manifest from the description of the uses of the building that by far the larger part of it is devoted to social and festive functions. It holds a club liquor license, and operates a dining room for its members. The gross receipts from the sale of food, intoxicating liquors and temperance drinks for the year from April 1, 1911, were in excess of $50,000 and from the rental of rooms $733, the net profits from these sources being $4,256.09. Its total receipts from all sources, including membership and initiation fees, were nearly $88,000. It is apparent from this summary of the facts set out at length in the agreed statement, that the dominant use to which real estate of the plaintiff is put is that of a private club rather than a headquarters for the dispensation of charitable relief. It provides for the refreshment, rest and amusement of its members. The building has the furnishings and accessories which accompany the establishments of private social organizations. Its size and equipment suggest this purpose. The large proportion of its expenditures and receipts arise in this connection. The objects chiefly subserved by this real estate and the methods of its administration stamp it plainly as a social and not a charitable enterprise.

The case at bar falls in the class of which *Phi Beta Epsilon Co.* v. *Boston,* 182 Mass. 457 and cases there collected, *Amherst College* v. *Amherst,* 173 Mass. 232, and *Salem Lyceum* v. *Salem,* 154 Mass. 15, are examples. It requires no discussion to distin-

guish this case from *New England Sanitarium* v. *Stoneham*, 205 Mass. 335, *Molly Varnum Chapter D. A. R.* v. *Lowell*, 204 Mass. 487, *Franklin Square House* v. *Boston*, 188 Mass. 409, *Masonic Education & Charity Trust* v. *Boston*, 201 Mass. 320, *Little* v. *Newburyport*, 210 Mass. 414, and cases of that character where the main mission to which the real estate was devoted was charitable. A similar conclusion was reached in *Green Bay Lodge, No. 259, B. P. O. E.* v. *Green Bay*, 122 Wis. 452. Although an opposite result was reached by two judges in *Salt Lake Lodge, 85, B. P. O. E.* v. *Groesbeck*, 40 Utah, 1, there is a strong dissenting opinion by the third which accords with the view we take. The finding of the Superior Court was warranted.

*Judgment affirmed.*